Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Mark S. Zhai (SBN 287988)
mzhai@blakelylawgroup.com
**BLAKELY LAW GROUP**
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff*
*Deadly Doll, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEADLY DOLL, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>REDBUBBLE INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**1. TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT**<br><br>**2. FALSE DESIGNATIONS OF ORIGIN AND FALSE DESCRIPTIONS**<br><br>*3.* **UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE, § 17200** *et seq.*<br><br>**4. COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Deadly Doll, Inc. ("Plaintiff" or "Deadly Doll") for its claims against Defendants Redbubble, Inc. ("Redbubble") and DOES 1-10 (collectively, "Defendants") alleges as follows:

## JURISDICTION AND VENUE

1.  Plaintiff brings this Action against Defendants for trademark infringement and false designation of origin under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), as well as related claims of trademark infringement and unfair competition under the statutory and common law of the State of California.

2.  This Court has subject matter jurisdiction over Plaintiff's Lanham Act claims under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because such claims are so related to Plaintiff's federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

3.  This Court has personal jurisdiction over Defendants because Defendants maintain a principal place of business, conduct continuous and systematic business, placed Accused Products in the stream of commerce directed to residents of, derived commercial benefits from the sale of Accused Products, and caused injuries to Plaintiff within the State of California.

4.  Venue is proper under 28 U.S.C. §§ 1391 (b)-(c) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.

## THE PARTIES

5.  Plaintiff Deadly Doll, Inc. ("Deadly Doll") is a corporation organized and existing under the laws of the state of California, with an office and principal place of business located at 9100 Wilshire Blvd., Suite 1000 West, Beverly Hills, CA 90212.

6.  Upon information and belief, Defendant Redbubble, Inc. ("Redbubble") is a corporation organized and existing under the laws of the state of Delaware, with an office and principal place of business located at 111 Sutter Street, 17th Floor, San Francisco, CA 94104.

7.  Upon information and belief, together with Redbubble, other individuals and entities currently named as DOES 1-10 are responsible for one or more of the wrongful acts or omissions giving rise to the claims alleged herein, and that at all

relevant times, Redbubble and each one of DOES 1-10 served as an agent of the others and were acting within the course and scope of said agency. These other individuals and entities are fictitiously named DOES 1-10 because their true names and capacities are currently unknown, but Plaintiff will seek leave to amend the Complaint when their true names and capacities are ascertained.

8. Upon information and belief, at all relevant times herein, each one of Defendants Redbubble and DOES 1-10, inclusive, knew or reasonably should have known of the wrongful acts and behavior alleged herein and the damages caused thereby, ratified and encouraged such acts and behavior, and/or had a non-delegable duty to prevent such acts and behavior but failed or refused to do so.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. The Deadly Doll Brand and Trademarks

9. The story of Deadly Doll begins with its founder Ms. Jesse Jo Stark ("Ms. Stark"), an indie alt-rock singer and songwriter who has been making waves with her unapologetic stance, femme fatale style, and captivating music since releasing her debut album "Down Your Drain" in 2014.

10. Having discovered rock at an early age, Ms. Stark started performing at age 13. In the decade and a half that followed, inspirations for her varied repertoire came from anywhere and everywhere. For example, in 2017, she opened for the iconic Guns N' Roses, then for the better part of 2019, toured with indie-rock bands that include The Vaccines, Sunflower Bean, and The Heavy.

11. Besides her burgeoning music career, Ms. Stark began spreading her creative wings into the fashion world by designing jewelry collections for Chrome Hearts, the ultra-luxurious rock 'n' roll fashion label that has famously outfitted everyone from Steven Tyler and Mick Jagger to Drake and Kanye West. Ms. Stark also designed apparel and footwear in collaboration with a number of companies such as Vans, before starting her own apparel line in 2017, Deadly Doll.

12. Named after one of Ms. Stark's well-known tracks, Deadly Doll offers a range of apparel products, from tops to bottoms to accessories. Deadly Doll's unique line of products include apparel emblazoned with hand-drawn retro cartoon-inspired graphics and the Deadly Doll logo, several examples of which are shown below:



13. The high artistry, fashion, and unique style of Deadly Doll's designs have been recognized by the media and appear in a wide range of social media, magazines articles, blogs, and publications within the fashion industry as well as those directed to the general public around the world. In addition, many well-known artists and celebrities, including Kylie Jenner, Dua Lipa, Bella Hadid and Irina Shayk, are regularly seen wearing Deadly Doll's apparel and praising its one-of-a-kind designs.

14. In order to protect its brand, Deadly Doll owns U.S. federal trademarks (the "Deadly Doll Marks") comprising of the word "Deadly Doll" and design components, including U.S. Tr. Reg. No. 6,046,722 for goods and services in Class 009

(musical CDs and recordings) and U.S. Tr. Reg. No. 6,0464,20 for goods and services in Class 025 (clothing, namely, tee shirts, shirts, tank tops, sweatshirts, sweatpants, shorts, jeans, jackets, sweaters, coats, dresses, skirts, pants, ties, hats, gloves, scarves, socks, underwear, swimwear, sleepwear and footwear).

15. From the date of first use set forth in the trademark registrations, Deadly Doll has been continuously using the Deadly Doll Marks in interstate commerce in connection with its sale, distribution, promotion, and advertising of its goods and services. Every year, Deadly Doll also devotes substantial time, effort, and money to designing, developing, advertising, promoting, and marketing its products and the Deadly Doll brand.

16. Due to Deadly Doll's unique products, advertising, and praise from others, including other well-known artists and celebrities, the Deadly Doll Marks have achieved widespread recognition amongst the consuming public and trade throughout the United States. Today, Deadly Doll Marks have come to identify, in the United States and throughout the world, Deadly Doll as the source of the distinctive apparel and accessories that are designed and manufactured exclusively by Deadly Doll.

**B.    Defendants' Infringing Conduct**

17. The present lawsuit arises from Defendants' manufacture, production, marketing, distribution, advertisement, offering for sale, and/or sale of apparel products and accessories that bear counterfeit marks identical and/or confusingly similar to one

or more of the Deadly Doll Marks (the "Accused Products"), several examples of which are shown below:



*Examples of Accused Products*



*Examples of Accused Products*

18. Upon information and belief, Redbubble is a company engaged in the promotion, marketing and sale of clothing products and accessories through its highly interactive website (https://www.redbubble.com/), which is accessible to consumers throughout the United States, including those within this judicial district.

19. Upon information and belief, in exchange for a portion of every sale made through its website, Redbubble supplies the tools to design products, provides a complete online storefront, marketing services, logistical and technical support, payment processing, and manufactures or causes the manufacture of products, including the Accused Products that are sold and shipped into the Central District of California.

20. Deadly Doll has not granted a license nor given Defendants any form of permission to use its intellectual property, including the Deadly Doll Marks.

21. Upon information and belief, through Redbubble's promotion, advertisement, and sale of Accused Products on its highly interactive website, Defendants purposefully introduced Accused Products to consumers within the Central District of California in a way that creates confusion for consumers, including Plaintiff's customers. For example, a search for "Deadly Doll" using the interactive product search bar on Redbubble's website results in approximately 55 types[1] of Accused Products being offered for sale.

22. Upon information and belief, the Accused Products that Defendants sold and shipped in this district are likely to cause confusion for consumers within this district, including Plaintiff's customers, who, at the time of initial interest, sale, and in the post-sale setting are led to believe that the Accused Products are genuine goods originating from, associated with, and/or approved by Deadly Doll.

23. Upon information and belief, Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive as

---

[1] redbubble.com/shop/?query=%E2%80%9CDeadly%20Doll%22&ref=search_box

to the origin, affiliation, or association of the Accused Products with Deadly Doll, and/or the sponsorship or approval of the Accused Products by Deadly Doll.

## FIRST CAUSE OF ACTION

### (Trademark Infringement Under the Lanham Act, 15 U.S.C. § 1114)

24. Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

25. The Deadly Doll Marks are nationally recognized, including within the Central District of California, as being affixed to goods and services of the highest quality, with Deadly Doll being the exclusive source of all such products.

26. The specific U.S. registrations to the Deadly Doll Marks identified herein are in full force and effect, and each one has been in continuous use since their respective first dates of use.

27. Upon information and belief, the Accused Products bear identical or confusingly similar reproductions of one or more Deadly Doll Marks that are likely to lead to and result in consumers believing that Deadly Doll produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Deadly Doll.

28. Defendants' use of the Deadly Doll Marks is without Deadly Doll's permission or authority and in total disregard of Deadly Doll's rights to control its intellectual property.

29. Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods or services and to injure Deadly Doll and reap the benefits of goodwill associated with the Deadly Doll Marks.

30. As a direct and proximate result of Defendants' infringing conduct, Deadly Doll has been injured and will continue to suffer injury to its business and reputation unless Defendants are enjoined from advertising, selling, and offering for sale products bearing the Deadly Doll Marks that are not in fact authentic Deadly Doll products.

31. As Deadly Doll has no adequate remedy at law, it is entitled to injunctive relief prohibiting Defendants from using any of the Deadly Doll Marks, and/or any marks identical and/or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Deadly Doll has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## SECOND CAUSE OF ACTION

**(False Designation of Origin and False Descriptions – 15 U.S.C. § 1125(a))**

32. Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

33. Defendants' unauthorized use of marks confusingly similar to the Deadly Doll Marks on its merchandise in interstate commerce and advertising relating to same constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise affiliated with Deadly Doll when in fact they do not.

34. Defendants' use of the Deadly Doll Marks is without Deadly Doll's permission or authority and in total disregard of Deadly Doll's rights to control its trademarks.

35. Defendants' activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Deadly Doll has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Deadly Doll.

36. Deadly Doll has no adequate remedy at law.

37. In light of the foregoing, Deadly Doll is entitled to injunctive relief prohibiting Defendants from using any of the Deadly Doll Marks, and/or any marks identical and/or confusingly similar thereto, and to recover from Defendants all

damages, including attorneys' fees, that Deadly Doll has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, attorneys' fees and treble damages, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a)-(b), and/or statutory damages pursuant to 15 U.S.C § 1117(c).

## THIRD CAUSE OF ACTION

### (Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 *et seq.*)

38. Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

39. The Deadly Doll Marks are distinctive marks that have achieved widespread public recognition in the State of California.

40. Defendants' misappropriation of the Deadly Doll Marks was intended to capitalize on Deadly Doll's goodwill for Defendants' own pecuniary gain.

41. Defendants' unauthorized use of the Deadly Doll Marks dilutes the distinctive quality of the Deadly Doll Marks and decreases the capacity of such marks to identify and distinguish Deadly Doll's products, harming Deadly Doll's reputation and goodwill behind its products.

42. By the acts described above, Defendants have caused and will continue to cause irreparable injury to Deadly Doll's goodwill and business reputation, in violation of Cal. Bus. & Prof. Code § 17200 *et seq*.

43. Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

44. Defendants are liable to Deadly Doll for all restitution caused by Defendants' misappropriation of Deadly Doll's trademarks, reputation, and goodwill.

45. Defendants' acts have damaged and will continue to damage Deadly Doll, and Defendants will continue their infringing acts unless restrained by this Court such that Deadly Doll has no adequate remedy at law.

46. In light of the foregoing, Deadly Doll is entitled to all available relief provided for under Cal. Bus. & Prof. Code, § 17200, *et. seq.* including permanent injunctive relief, restitution, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

**(Common Law Trademark Infringement and Unfair Competition)**

47. Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

48. Deadly Doll owns and enjoys common law trademark rights to the Deadly Doll Marks in California and throughout the United States.

49. Deadly Doll has expended substantial time, resources and effort to obtain common law trademark rights to the Deadly Doll Marks, and maintain the reputation of its products marked under, and the goodwill associated with, the Deadly Doll Marks.

50. Defendants' misappropriation of Deadly Doll's trademarks was intended to capitalize on Deadly Doll's goodwill for Defendants' own pecuniary gain.

51. Defendants' unauthorized use of the Deadly Doll Marks has caused and is likely to cause confusion as to the source of Accused Products to the detriment of Deadly Doll, constituting unfair competition under California common law.

52. As a result of Defendants have been unjustly enriched and are benefiting from intellectual property rights that rightfully belong exclusively to Deadly Doll.

53. Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Deadly Doll. Defendants' unlawful acts complained of herein is extreme, outrageous, fraudulent, and taken in reckless disregard of Deadly Doll's rights. Said conduct supports an award of exemplary and punitive damages in an amount sufficient to deter Defendants from unlawful conduct in the future.

54. Deadly Doll has no adequate remedy at law to compensate it fully for the damages that have been caused and which will continue to be caused by Defendants' infringing conduct unless enjoined by this Court.

55. In light of the foregoing, Deadly Doll is entitled to injunctive relief prohibiting Defendants from using the Deadly Doll Marks, and to recover all damages, including attorneys' fees, for injuries Deadly Doll has sustained and will sustain due to Defendants' unlawful acts, as well as restitution of all gains, profits and advantages obtained by Defendants as a result of their infringing in an amount to be determined at trial and the costs of this Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Deadly Doll, Inc. respectfully prays that this Court enter judgment in its favor and against Defendants as follows:

1. Entry of an ORDER granting temporary, preliminary and permanent injunctive relief restraining and enjoining Defendants, including their officers, agents, employees, and all persons or entities in active concert or participation with them, from:

   a. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products and/or any other products that bear the Deadly Doll Marks, or any other marks confusingly similar thereto;

   b. engaging in any other activity constituting unfair competition with Deadly Doll, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements associated with Deadly Doll;

   c. committing any other act which falsely represents, or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Deadly Doll;

2. Entry of an ORDER directing Defendants to recall from any distributors and retailers and to deliver to Deadly Doll for destruction, or other disposition, all remaining inventory of the Accused Products, in addition to any other goods that infringe upon the Deadly Doll Marks, including all advertisements, promotional and

marketing materials therefore, as well as means of making same in their possession or under their control;

3. Entry of an ORDER directing Defendants to disclose their supplier(s) and manufacturer(s) of the Accused Products and provide all documents, correspondence, receipts, and invoices associated with the purchase of the Accused Products;

4. Entry of an ORDER directing Defendants to file with this Court and serve on Deadly Doll within thirty (30) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

5. Entry of an ORDER for an accounting by Defendants of all gains, profits, and/or advantages derived from their infringing acts pursuant to 15 U.S.C. § 1117(a);

6. An award of all profits that Defendants have derived from using the Deadly Doll Marks, trebled, as well as costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act; alternatively, an award of statutory damages pursuant to 15 U.S.C. § 1117(c) up to $2 million per trademark counterfeited and infringed, per type of good;

7. An award of enhanced damages due to Defendants' willful infringement;

8. An award of applicable interest amounts, costs, disbursements, and/or attorneys' fees, as an exceptional case under 15 U.S.C. § 1117 or otherwise;

9. An award of fees and punitive damages to the full extent available in connection with Deadly Doll's claims under California law; and

10. Any such other relief that the Court may deem just and proper.

Dated:   March 2, 2021           **BLAKELY LAW GROUP**

                                 By:   */s/ Brent H. Blakely*
                                       Brent H. Blakely
                                       Mark S. Zhai
                                       ***Attorneys for Plaintiff***
                                       ***Deadly Doll, Inc.***

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Deadly Doll, Inc. hereby demands a trial by jury as to all claims in this litigation.

Dated:     March 2, 2021          **BLAKELY LAW GROUP**

By:  */s/ Brent H. Blakely*
Brent H. Blakely
Mark S. Zhai
***Attorneys for Plaintiff
Deadly Doll, Inc.***